UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEMMA ROY BREEDING,

          Plaintiff,                             Hon. Paul L. Maloney

v.                                      Case No. 1:07 CV 971

NANCY LANGE, et al.,

          Defendants.

_____/

## REPORT AND RECOMMENDATION

This matter is before the Court on Defendant Frank Olney, M.D.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #26), Plaintiff's Motion for Voluntary Dismissal of One Named Defendant Frank Olney, M.D., (dkt. #31), and Defendants' Rule 56(b) Motion for Summary Judgment, (dkt. #47). Pursuant to 28 U.S.C. § 636(b)(1)(B), the Court recommends that Defendants' motions be **granted** and Plaintiff's motion be **denied**.

## BACKGROUND

The following allegations are contained in Plaintiff's complaint.[1] On March 16, 2000, Plaintiff transferred to the Lakeland Correctional Facility. (Complaint at ¶ 2). Soon thereafter, Plaintiff was examined by Dr. Malatinsky, who concluded that Plaintiff "had a definite problem with [his] knees." (Complaint at ¶ 3). Dr. Malatinsky arranged for Plaintiff to be examined by Dr. Ikrim, who

---

[1] The Court notes that Plaintiff's complaint makes reference to numerous exhibits, none of which have been submitted to the Court.

performed surgery on Plaintiff's knees on February 1, 2001.  (Complaint at ¶¶ 3-4).  Dr. Ikrim informed

Plaintiff that he may require knee replacement in the future.  (Complaint at ¶ 4).

On March 6, 2003, Plaintiff was examined by Dr. Arora, who recommended that Plaintiff

undergo bilateral knee replacement.  (Complaint at ¶ 9).  Plaintiff's subsequent requests to be examined

by an orthopedic surgeon, however, were denied.  (Complaint at ¶¶ 10-13).  On May 19, 2003, Plaintiff

was informed that Defendant Olney had concluded that before undergoing knee replacement surgery

Plaintiff must lose weight.  (Complaint at ¶ 13).

On July 6, 2003, Plaintiff reported to Health Services that "it felt like [he] had something

sticking out of [his] right knee."  (Complaint at ¶ 17).  On July 11, 2003, Plaintiff was examined by

Nurse Aston.   (Complaint at ¶ 18).   X-rays of Plaintiff's knee were subsequently requested by

Physician's Assistant Kimball.  (Complaint at ¶ 19).  On September 18, 2003, Plaintiff submitted a

request for treatment to Health Services, which provided Plaintiff with anti-inflammatory medication.

(Complaint at ¶ 23).

On October 2, 2003, Plaintiff requested that he be examined by an orthopedic surgeon.

(Complaint at ¶ 24).  A "few days later" Plaintiff was examined by Defendant Olney.  (Complaint at ¶

25).  Plaintiff informed Olney that he wanted to be examined by an orthopedic surgeon and that he

"would not accept his lame excuses any longer."  (Complaint at ¶ 25).  Defendant Olney indicated to

Plaintiff that he would "make the appointment."  (Complaint at ¶ 25).  X-rays of Plaintiff's knees taken

on November 7, 2003, revealed that "no gross abnormalities existed."  (Complaint at ¶ 27).

On December 30, 2003, Plaintiff was examined by orthopedic surgeon, Dr. Mishra, who

concluded that Plaintiff required bilateral knee replacement.  (Complaint at ¶ 33).  On March 29, 2004,

Plaintiff underwent right knee replacement surgery performed by Dr. Mishra.  (Complaint at ¶¶ 42, 44,

51). Following this surgery, Dr. Mishra was "upset" because "in his opinion, what CMS, the MDOC, and LCF's Health Services did to [Plaintiff] by stalling the surgery, bordered on criminal negligence." (Complaint at ¶ 43). On April 14, 2004, Plaintiff was examined by Dr. Mishra, who reported that Plaintiff "was doing fine." (Complaint at ¶ 47). Plaintiff was instructed to continue his rehabilitation efforts. (Complaint at ¶ 47).

On June 3, 2004, Plaintiff was again examined by Dr. Mishra, who "released [Plaintiff] from his care with instructions to wait 90 days, and then start the process to have the left knee replaced." (Complaint at ¶ 51). On September 15, 2004, Plaintiff was examined by an unidentified doctor who informed Plaintiff that "he would go ahead and schedule [Plaintiff] to see Dr. Mishra, so [he] could get the left knee done." (Complaint at ¶ 54). Defendant Correctional Medical Services (CMS) denied Plaintiff's request to be examined by an orthopedic surgeon on the grounds that he first needed to lose weight. (Complaint at ¶¶ 55-72). Plaintiff successfully appealed this determination and was examined by Dr. Mishra on May 12, 2005. (Complaint at ¶¶ 72-75).

On August 8, 2005, Plaintiff underwent left knee replacement surgery performed by Dr. Mishra. (Complaint at ¶ 79). Plaintiff was discharged from the hospital on August 13, 2005, with instructions to begin participating in physical therapy. (Complaint at ¶ 80). On August 21, 2005, Plaintiff submitted a kite to Health Services "asking when physical therapy was to begin." (Complaint at ¶ 83). A nurse later informed Plaintiff that "CMS was not doing their job as far as getting physical therapy started." (Complaint at ¶¶ 83-84). Plaintiff began participating in physical therapy on August 31, 2005. (Complaint at ¶ 90).

On June 28, 2006, Plaintiff submitted a kite to physician's assistant Ouellette so that he could be examined "about the continual problems with [his] left knee." (Complaint at ¶ 127). An

appointment was scheduled for Plaintiff to be examined by Defendant Ouellette.  (Complaint at ¶ 127).

This appointment was cancelled and Plaintiff was instead scheduled to be examined by a doctor on July

7, 2006.  (Complaint at ¶ 128).  This appointment was subsequently cancelled.  (Complaint at ¶ 128).

On July 21, 2006, Plaintiff was examined by a nurse, who determined that Plaintiff needed to be

examined by a doctor.  (Complaint at ¶ 132).

On August 11, 2006, Plaintiff was examined by Defendant Gelabert.  (Complaint at ¶

135).  Dr. Gelabert "examined [Plaintiff's] left knee and ordered x-rays, stating he definitely felt that

with a lack of ROM, and the swelling, that something was wrong and quite possibly needs fixing."

(Complaint at ¶ 135).  On September 11, 2006, Plaintiff was again examined by Dr. Gelabert.

(Complaint at ¶ 143).  The doctor informed Plaintiff "that instead of doing the proper thing, he was

going to add medication for pain relief." (Complaint at ¶ 143).  Dr. Gelabert further stated that he would

"not do anything else."  (Complaint at ¶ 143).

On November 15, 2006, Plaintiff was examined by Defendant Ouellette, who, after

examining Plaintiff's left knee, stated that "she would approach CMS about an Orthopedic

appointment."  (Complaint at ¶¶ 165, 182).

On January 5, 2007, Plaintiff "stumbled" and "twisted" his left knee.  (Complaint at ¶

179).  Plaintiff submitted a kite to Health Services "because it felt like needles were sticking it and it

was on fire."  (Complaint at ¶ 179).  On January 8, 2007, Plaintiff was informed that he had "a pending

appointment."  (Complaint at ¶ 181).  Plaintiff was examined by nurse Pfost on January 10, 2007.

(Complaint at ¶ 182).  Plaintiff did not want to be examined by a nurse, but instead requested that he be

examined by a doctor as Defendant Ouellette had suggested.  (Complaint at ¶ 182).  According to

Plaintiff, Defendant Ouellette "failed to get with CMS about seeing the Orthopedic, Dr. Harmon." (Complaint at ¶ 182).

Plaintiff subsequently submitted a kite to Defendant Ouellette "about this oversight of not bothering to attempt to get me an appointment with Dr. Harmon." (Complaint at ¶ 183). On January 19, 2007, Defendant Ouellette informed Plaintiff that an appointment with Dr. Harmon had been scheduled. (Complaint at ¶ 183).

Plaintiff was examined by Defendant Ouellette on February 5, 2007. (Complaint at ¶ 185). When Plaintiff asserted that there were "bone fragments" in his knee, Ouellette responded that "she would check into it." (Complaint at ¶ 185). On May 7, 2007, Plaintiff was examined by Defendant Ouellette for his "chronic care and disability clinic." (Complaint at ¶ 195). When Plaintiff "brought up the issue with [his] knees, [Ouellette] did the clinic and then dismissed [him], as she did not wish to talk about it." (Complaint at ¶ 195).

Plaintiff initiated this action on September 27, 2007, against the Michigan Department of Corrections and Correctional Medical Services, as well as the following individuals: Nancy Lange, Dr. Frank Olney, Dr. Donald Parkhurst, Dr. Raymond Gelabert, Steven Winchester, Jacklyn Jackson, Jim Armstrong, Margaret Ouellette, and Mary Ann Schorfhaar. Plaintiff alleges that he was denied appropriate medical treatment in violation of his Eighth Amendment rights. Plaintiff seeks more than $159,000,000 in money damages. Defendant Olney moves to dismiss Plaintiff's claims as untimely and Defendants Armstrong, Lange, Parkhurst, Schorfhaar, and Winchester, as well as the Michigan Department of Corrections move for summary judgment.

## **STANDARD**

When considering a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all Plaintiff's allegations and construe the complaint liberally in his favor. *See Herron v. Harrison*, 203 F.3d 410, 414 (6th Cir. 2000). Furthermore, complaints filed by pro se plaintiffs are held to an "especially liberal standard, and should only be dismissed for failure to state a claim if it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A party moving for summary judgment can satisfy its burden by demonstrating "that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case." *Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005); *see also*, *Amini v. Oberlin College*, 440 F.3d 350, 357 (6th Cir. 2006) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). The fact that the evidence may be controlled or possessed by the moving party does not change the non-moving party's burden "to show sufficient evidence from which a jury could reasonably find in her favor, again, so long as she has had a full opportunity to conduct discovery." *Minadeo*, 398 F.3d at 761 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986)).

Once the moving party has met its burden of production, the non-moving party "must identify specific facts that can be established by admissible evidence, which demonstrate a genuine issue for trial." *Amini*, 440 F.3d at 357 (citing *Anderson*, 477 U.S. at 247-48; *Celotex Corp. v. Catrett*, 477 U.S. at 324). While the Court must view the evidence in the light most favorable to the nonmoving

party, the party opposing the summary judgment motion "must do more than simply show that there is some metaphysical doubt as to the material facts." *Amini*, 440 F.3d at 357.  The existence of a mere "scintilla of evidence" in support of the non-moving party's position is insufficient.  *Daniels v. Woodside*, 396 F.3d 730, 734-35 (6th Cir. 2005) (quoting *Anderson*, 477 U.S. at 252).  The non-moving party "may not rest upon [his] mere allegations," but must instead present "significant probative evidence" establishing that "there is a genuine issue for trial."  *Pack v. Damon Corp.*, 434 F.3d 810, 813-14 (6th Cir. 2006) (citations omitted).

Moreover, the non-moving party cannot defeat a properly supported motion for summary judgment by "simply arguing that it relies solely or in part upon credibility determinations."  *Fogerty v. MGM Group Holdings Corp., Inc.*, 379 F.3d 348, 353 (6th Cir. 2004).  Rather, the non-moving party "must be able to point to some facts which may or will entitle him to judgment, or refute the proof of the moving party in some material portion, and. . .may not merely recite the incantation, 'Credibility,' and have a trial on the hope that a jury may disbelieve factually uncontested proof."  *Id.* at 353-54.  In sum, summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Daniels*, 396 F.3d at 735.

## ANALYSIS

### I.          Motion to Dismiss

Plaintiff has asserted two claims against Defendant Olney, each of which is separately described below.  Defendant Olney seeks dismissal of Plaintiff's claims on the grounds that such were not timely asserted.

When determining the limitations period applicable in a § 1983 action, courts must borrow the statue of limitations which governs personal injury actions in the state in which the § 1983 action was initiated. *See Owens v. Okure*, 488 U.S. 235, 239-41 (1989); *Banks v. City of Whitehall*, 344 F.3d 550, 553 (6th Cir. 2003). Where the relevant state law provides multiple statutes of limitation for personal injury actions, courts are to apply the "general or residual statute for personal injury actions." *Okure*, 488 U.S. at 249-50; *Banks*, 344 F.3d at 553. Michigan law articulates multiple statutes of limitation applicable to personal injury actions. *See* Mich. Comp. Laws § 600.5805. Accordingly, the limitations period applicable in the present action is three years, as articulated in Mich. Comp. Laws § 600.5805(10). *See Hardin v. Straub*, 490 U.S. 536, 540 (1989); *Jones v. City of Hamtramck*, 905 F.2d 908, 909 (6th Cir. 1990).[2]

While the Court looks to state law to identify the applicable statute of limitations, federal law must be applied when determining when the relevant limitations period begins to run. *See Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). Under federal law, a civil rights claim accrues "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Sevier v. Turner*, 742 F.2d 262, 273 (6th Cir. 1984); *Bowden v. City of Franklin*, 2001 WL 670059 at *4 (6th Cir., June 6, 2001). A plaintiff has reason to know of his injury when he "should have discovered it through the exercise of reasonable diligence." *Sevier*, 742 F.2d at 273; *Bowden*, 2001 WL at *4.

---

[2] The *Hardin* and *Jones* courts identified the relevant provision as Mich. Comp. Laws § 600.5805(8). This particular provision is presently codified at Mich. Comp. Laws § 600.5805(10).

A.      Weight Loss Claim

On May 19, 2003, Plaintiff learned that Defendant Olney had allegedly determined that Plaintiff must lose weight before undergoing knee replacement surgery.  While not expressly stated, Plaintiff's claim appears to be that by requiring him to lose weight before undergoing knee replacement Defendant Olney was improperly denying or delaying necessary medical care.  The statute of limitations for this claim began to run on May 19, 2003.  Therefore, unless the limitations period was properly tolled, Plaintiff's claim, filed on September 27, 2007, is untimely.

B.      Orthopedic Referral Claim

Plaintiff's second claim against Defendant Olney concerns Olney's October 2003 examination of Plaintiff.  On October 2, 2003, Plaintiff requested that he be examined by an orthopedic surgeon.  Plaintiff was instead examined by Defendant Olney a "few days later."  During this examination, Plaintiff requested that Olney arrange for him to be examined by an orthopedic surgeon. Defendant Olney indicated to Plaintiff that he would "make the appointment."  Plaintiff was subsequently examined by orthopedic surgeon, Dr. Mishra, on December 30, 2003.

Plaintiff has failed to articulate the basis for any claim based upon these facts.  Plaintiff does not allege that Defendant Olney denied him treatment or that he failed to arrange for him to be examined by an orthopedic surgeon.  In the Court's estimation, the only possible claim arising out of these facts is that Defendant Olney unduly delayed in securing his examination by Dr. Mishra.  The statute of limitations on such a claim would have begun to run no later than December 30, 2003, the date on which he was examined by Dr. Mishra.  Again, unless the limitations period was properly tolled, Plaintiff's claim, filed on September 27, 2007, is untimely.

In response to Defendant Olney's motion, Plaintiff does not assert that he is entitled to tolling of the limitations period or that his claims against Olney were timely filed.  Instead, Plaintiff requests that his claims against Defendant Olney simply be dismissed.  However, Plaintiff does not indicate whether he is requesting dismissal with or without prejudice.  Understandably, Defendant Olney has reiterated that the Court must dismiss Plaintiff's claims against him with prejudice as such were not timely filed.  As discussed above, Plaintiff's claims against Defendant Olney are untimely absent a tolling of the statute of limitations.  Plaintiff has not claimed entitlement to any such tolling.  Accordingly, the Court recommends that Plaintiff's claims against Defendant Olney be dismissed with prejudice as untimely filed.

## II.        Motion for Summary Judgment

Defendants Armstrong, Lange, Parkhurst, Schorfhaar, Winchester, and Michigan Department of Corrections (MDOC) move for summary judgment on various grounds as discussed below.

### A.        Defendant Michigan Department of Corrections

Plaintiff has sued the Michigan Department of Corrections (MDOC) seeking only money damages.  The MDOC is not a person under 42 U.S.C. § 1983 and, furthermore, enjoys immunity from suits for money damages under the Eleventh Amendment.  *See Will v. Michigan Dep't of State Police*, 491 U.S. 58, 65-71 (1989); *Hamilton's Bogarts, Inc. v. Michigan*, 501 F.3d 644, 654 n.8 (6th Cir. 2007).  Accordingly, the Court recommends that Plaintiff's claims against the MDOC be dismissed.

B.     Defendants Lange and Parkhurst

On April 11, 2005, Plaintiff initiated a civil rights action based on the same nucleus of facts as alleged herein. *Breeding v. Jackson,* 4:05-cv-42 (W.D. Mich.).  In this earlier case, Plaintiff asserted against Defendants Lange and Parkhurst the exact same claims which have been asserted in the present action.  On January 30, 2006, the undersigned issued a Report and Recommendation in the earlier action recommending that Plaintiff's claims against Defendants Lange and Parkhurst be dismissed for failure to state a claim upon which relief may be granted and, alternatively, for failure to properly exhaust administrative remedies. *Breeding v. Jackson,* 4:05-cv-42, Dkt. #29 (W.D. Mich.). Because no objections to this Report and Recommendation were filed, it was "approved and adopted as the opinion of the court." *Breeding v. Jackson,* 4:05-cv-42, Dkt. #31 (W.D. Mich.).  Defendants Lange and Parkhurst assert that the claims asserted against them in the present matter must be dismissed on res judicata grounds.

The doctrine of res judicata, also known as claim preclusion, provides that "a final judgment on the merits of an action precludes the 'parties or their privies from relitigating issues that were or could have been raised' in a prior action." *Kane v. Magna Mixer Co.*, 71 F.3d 555, 560 (6th Cir. 1995) (quoting *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981)).  To apply res judicata, four elements must be satisfied: (1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action. *Kane*, 71 F.3d at 560 (citation omitted).

All four elements are satisfied here.  Accordingly, the claims asserted in the present matter against Defendants Lange and Parkhurse are precluded by the doctrine of res judicata.  The fact

-11-

that the previous dismissal of these claims rested on alternative grounds, only one of which constituted a "decision on the merits," is of no consequence, as "[a]n alternative ground for a particular judgment is entitled to res judicata." *Bess v. Spitzer*, 459 F.Supp.2d 191, 200 (E.D.N.Y. 2007) (citing *Willaims v. Ward*, 556 F.2d 1143, 1154 (2d Cir. 1977)); *see also, Magnus Electronics, Inc. v. La Republica Argentina*, 830 F.2d 1396, 1402 (7th Cir. 1987) ("an alternative ground upon which a decision is based should be regarded as 'necessary' for purposes of determining whether the plaintiff is precluded by the principles of res judicata or collateral estoppel from relitigating in a subsequent lawsuit any of those alternative grounds") (citations omitted); *N.A.A.C.P., Detroit Branch v. Detroit Police Officers Assoc.*, 525 F.Supp. 1215, 1223 (E.D. Mich. 1981) (where alternative holdings are "independently sufficient to support the judgment" such are accorded preclusive effect).

Accordingly, the Court recommends that Defendants Lange and Parkhurst are entitled to summary judgment.

C.      Defendants Armstrong and Winchester

The only claims that Plaintiff asserts against Defendants Armstrong and Winchester is that they denied the various grievances he filed regarding the matters at issue in this case.

Liability in a § 1983 action cannot be premised upon passive behavior or an alleged failure to act, rather liability must be based upon active unconstitutional behavior. *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Salehpour v. University of Tennessee*, 159 F.3d 199, 206-07 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999). Accordingly, liability in a § 1983 action does not attach based upon allegations that a defendant simply denied a prisoner's grievance. *See Skinner v. Govorchin*, 463 F.3d 518, 525-26 (6th Cir. 2006); *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999);

*Lee v. Michigan Parole Board*, 2004 WL 1532563 at *2 (6th Cir., June 23, 2004) ("[s]ection 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act upon information contained in a grievance"); *Alder v. Correctional Medical Services*, 2003 WL 22025373 at *2 (6th Cir., Aug. 27, 2003) ("[t]he mere denial of a prisoner's grievance states no claim of constitutional dimension").

Accordingly, the Court recommends that Defendants Armstrong and Winchester are entitled to summary judgment.

D.      Defendant Schorfhaar

In his complaint, Plaintiff asserts that on March 6, 2007, he wrote a letter to Defendant Schorfhaar, "seeking to resolve my knee problems with Health Services." (Complaint at ¶ 188). Plaintiff asserts that on March 13, 2007, he received from Defendant Schorfhaar a reply in which she "denied appropriate treatment." (Complaint at ¶ 190). According to Plaintiff, he "immediately sent an appeal letter" to Defendant Schorfhaar. (Complaint at ¶ 191). Defendant Schorfhaar denied Plaintiff's appeal. (Complaint at ¶ 191). Defendant Schorfhaar asserts that she never denied Plaintiff treatment or medical care. While the Court disagrees that Schorfhaar did not deny Plaintiff medical treatment, the Court nonetheless concludes that she is entitled to summary judgment.

In his response to Defendant Schorfhaar's motion, Plaintiff has submitted a copy of the second letter described above, on which Schorfhaar's response is written. (Dkt. #54, Exhibit F). In this letter, Plaintiff reiterates that he is experiencing difficulty with his left knee. Plaintiff then states that he is requesting "a consult with the Orthopedic to determine whether or not something is amiss, and

needs fixing, or if there is something I can do on a personal level that will solve the problem."

Defendant Schorfhaar responded to Plaintiff's request as follows:

> Please be advised that you may request a second opinion at your own expense. The RUM or ARUS of your housing unit can help you with the process.

*Id.*

Defendant Schorfhaar has submitted no evidence refuting or otherwise challenging the contents of this letter.  Schorfhaar acknowledges that she does "sometimes write and return a response to a prisoner's inquiry about their health care concern."  (Dkt. #48, Exhibit 3).  Defendant Schorfhaar nonetheless claims that she is entitled to summary judgment because she did not act to deny Plaintiff medical treatment.  In this respect, Schorfhaar characterizes her decision denying Plaintiff's request to be examined by an orthopedic surgeon as "administrative" rather than "medical."  Schorfhaar further asserts that "medical treatment is prescribed/ordered by the Medical Service Provider, i.e., CMS Physician or CMS Physician Assistant."  (Dkt. #48, Exhibit 3).

The Court recognizes that Schorfhaar may not have "examined" Plaintiff or exercised any "medical" judgment with respect to his request for medical treatment.  However, such does not detract from the fact that the evidence thus far submitted reveals that Plaintiff directed to Defendant Schorfhaar a request to be examined by an orthopedic surgeon, a request which Schorfhaar denied.  The fact that this decision may have been made for "administrative" rather than "medical" reasons is, in this instance, a distinction without a difference.  Thus, the Court cannot agree with Defendant Schorfhaar that she was not involved in Plaintiff's medical treatment or that she did not deny his request for medical treatment.  Having determined that the evidence thus far submitted supports Plaintiff's assertion that

Defendant Schorfhaar denied his request for medical treatment, the question then becomes whether such denial runs afoul of the Eighth Amendment.

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations which occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Accordingly, the Eighth Amendment protects against the unnecessary and wanton infliction of pain, the existence of which is evidenced by the "deliberate indifference" to an inmate's "serious medical needs." *Estelle*, 429 U.S. at 104-06; *Napier v. Madison County, Kentucky*, 238 F.3d 739, 742 (6th Cir. 2001).

The analysis by which Defendant's conduct is evaluated consists of two-steps. First, the Court must determine, objectively, whether the alleged deprivation was sufficiently serious. In this respect, "the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. If the objective test is met, the Court must then determine whether the officials possessed a sufficiently culpable state of mind:

> a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.

*Id.* at 837.

In other words, Plaintiff must establish that Defendant "actually knew" that he "faced a substantial risk of serious harm and disregarded that risk by failing to take reasonable measures to abate it." *Howard v. Calhoun County*, 148 F.Supp.2d 883, 888-89 (W.D. Mich. 2001) (citing *Farmer*, 511 U.S. at 847).

Neither party has submitted any evidence from which it can be concluded that as of March 13, 2007, Plaintiff's medical condition regarding his left knee was such that Defendant Schorfhaar's refusal to accede to his request to be examined by an orthopedic surgeon subjected him to "a substantial risk of serious harm." Thus, Plaintiff cannot satisfy the objective element of the analysis. Accordingly, the Court recommends that Defendant Schorfhaar be granted summary judgment.

## CONCLUSION

For the reasons articulated herein, the Court recommends that Defendant Frank Olney, M.D.'s Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), (dkt. #26), be **granted**; Plaintiff's Motion for Voluntary Dismissal of One Named Defendant Frank Olney, M.D., (dkt. #31), be **denied**; and Defendants' Rule 56(b) Motion for Summary Judgment, (dkt. #47), be **granted**.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within ten (10) days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir.1981).

Respectfully submitted,


Date:  June 13, 2008                           /s/ Ellen S. Carmody
                                               ELLEN S. CARMODY
                                               United States Magistrate Judge